[No. B204778. Second Dist., Div. Four. Apr. 21, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
FAIRMONT SPECIALTY GROUP, Defendant and Appellant.

COUNSEL

Nunez and Bernstein and E. Alan Nunez for Defendant and Appellant.

Raymond G. Fortner, Jr., County Counsel, and Joanne K. Nielsen, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

MANELLA, J.—Appellant Fairmont Specialty Group raises the issue whether the forfeiture of a bail bond which occurs when a defendant fails to appear at a scheduled criminal hearing should be set aside under Penal Code section 1305, subdivision (c)(2) when, within 185 days of the declaration of forfeiture, the defendant is arrested on an unrelated offense, the outstanding bench warrant is discovered by the arresting authorities, but the defendant is released at the behest of law enforcement officials in whose jurisdiction the original crime occurred.[1] We conclude that under the facts presented, the defendant was under " 'arrest' " or on "hold" within the meaning of section 1305, subdivision (h), and that Fairmont's motion to vacate the forfeiture and exonerate the bond should have been granted.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 3, 2006, Bad Boys Bail Bonds, acting as an agent of Fairmont, posted bond for the release of Yolanda Patrice Davis in case No. YA063302.[2]

---

[1] Statutory references are to the Penal Code.

[2] Davis, initially identified by the alias Dezire Moore, was charged with petty theft with priors (§ 666).

On July 12, 2006, Davis failed to appear at a scheduled hearing. The court declared the bail forfeited and issued a bench warrant. The clerk mailed notice of forfeiture to Fairmont on July 14, 2006. The notice stated: "Your contractual obligation to pay this bond will become absolute on the 186 day following the date of the mailing of this notice unless the court shall order the forfeiture set aside and the bond reinstated. You may within 185 days from the date of the mailing of this notice surrender the defendant to the court or to custody or appear in court to make a motion to set aside the forfeiture of bail/bond."[3]

On motion of Fairmont, the court extended the period within which to surrender the defendant or set aside the forfeiture to August 1, 2007.[4] On August 7, 2007, the court entered summary judgment on the bond.

On August 29, 2007, Fairmont moved to set aside the summary judgment, discharge the forfeiture and exonerate the bail. Fairmont presented evidence that on August 21, 2006, approximately one month after Davis failed to appear and the court declared bail forfeited, Davis was arrested by the Culver City Police Department for shoplifting. The booking officer learned of the bench warrant. She called the Inglewood Police Department and was advised, according to her report, "to release [defendant] on the above warrant due to medical concerns."

In opposition to Fairmont's motion, respondent County of Los Angeles presented a declaration from the Culver City booking officer, Heidi Hattrup, who stated: "Davis was transported to Culver City Police Department and booked on [charges] stemming from the [shoplifting] incident . . . . [¶] At Culver City Police Department it was discovered that [Davis] had an outstanding Inglewood warrant . . . . Sergeant Salcedo of Inglewood Police Department was contacted and advised us not to arrest Davis on the above warrant due to medical concerns. The outstanding warrant was not discovered until after Davis was placed in custody on the new burglary charge; therefore I never placed her under arrest for the outstanding warrant."

The court denied Fairmont's motion. This appeal followed.

---

[3] Once a notice of forfeiture is mailed by the clerk, a surety has 180 days, plus five days for service of the notice of forfeiture by mail, within which to obtain relief from forfeiture or exoneration of bail. (§ 1305, subd. (c); *People v. Ranger Ins. Co.* (2002) 99 Cal.App.4th 1229, 1232 [122 Cal.Rptr.2d 371], disapproved in part on another ground in *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653 [16 Cal.Rptr.3d 76, 93 P.3d 1020].)

[4] Under section 1305.4, the surety may file a motion for an order extending the 185-day period within which the surety may obtain relief from forfeiture. The motion must be filed before expiration of the period, but may be calendared to be heard within 30 days thereafter. (§§ 1305, subd. (i), 1305.4.)

## DISCUSSION

### A. *Standard of Review*

An order denying a motion to vacate or set aside a forfeiture and exonerate the bail is an appealable order. (*People v. Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379, 1382 [59 Cal.Rptr.2d 777].)[5] The resolution of such a motion "is within the trial court's discretion and should not be disturbed on appeal unless an abuse of discretion appears in the record." (*People v. Legion Ins. Co.* (2002) 102 Cal.App.4th 1192, 1195 [126 Cal.Rptr.2d 172]; accord, *People v. American Contractors Indemnity* (1999) 74 Cal.App.4th 1037, 1043 [88 Cal.Rptr.2d 572].) However, where, as here, we review the trial court's interpretation of a statute on uncontested facts, the issue concerns a pure question of law and is subject to de novo review. (*People v. American Bankers Ins. Co.* (1992) 4 Cal.App.4th 348, 351 [5 Cal.Rptr.2d 620]; see *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

### B. *Exoneration of Bond Under Section 1305, Subdivision (c)(2)*

■ " 'The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court.' " (*People v. American Contractors Indemnity Co., supra,* 33 Cal.4th at p. 657, quoting *People v. Wilcox* (1960) 53 Cal.2d 651, 656–657 [2 Cal.Rptr. 754, 349 P.2d 522].) "A bail bond is in the nature of a contract between the government and the surety, in which the surety acts as a guarantor of the defendant's appearance under risk of forfeiture of the bond. [Citation.] 'In general the state and surety agree that if the state will release the defendant from custody, the surety will undertake that the defendant will appear personally and at a specified time and place . . . . If the defendant fails to appear at the proper time and place, the surety becomes the absolute debtor of the state for the amount of the bond.' [Citation.]" (*People v. Amwest Surety Ins. Co.* (1991) 229 Cal.App.3d 351, 356 [280 Cal.Rptr. 58]; accord, *People v. Amwest Surety Ins. Co.* (2001) 87 Cal.App.4th 69, 71 [104 Cal.Rptr.2d 282].)

■ Section 1305 requires bail to be forfeited if the defendant fails to appear on "[a]ny . . . occasion prior to the pronouncement of judgment if [his

---

[5] Because bonds generally include a clause authorizing the entry of summary judgment after forfeiture, such judgments are considered nonappealable consent judgments. However, where the summary judgment is not entered in compliance with the jurisdictional prescriptions contained in sections 1305 and 1306, it is not in accord with the consent given and may also be the subject of an appeal. (*People v. American Contractors Indemnity Co., supra,* 33 Cal.4th at pp. 663–664; *County of Los Angeles v. American Bankers Ins. Co.* (1996) 44 Cal.App.4th 792, 795 [52 Cal.Rptr.2d 75].)

or her] presence in court is lawfully required." (*Id.*, subd. (a)(4).) The statute goes on to specify a number of situations in which the forfeiture must be vacated and the bond exonerated: if the defendant appears voluntarily or in custody in court within 180 days of the date of mailing notice of forfeiture (*id.*, subd. (c)(1)); if "within the county where the case is located, the defendant is surrendered to custody by the bail or is arrested in the underlying case within the 180-day period, and is subsequently released from custody prior to an appearance in court" (*id.*, subd. (c)(2)); if "outside the county where the case is located, the defendant is surrendered to custody by the bail or is arrested in the underlying case within the 180-day period" (*id.*, subd. (c)(3)); if the defendant is permanently or temporarily disabled due to "illness, insanity, or detention by military or civil authorities" (*id.*, subds. (d), (e)); "where a defendant is in custody beyond the jurisdiction of the court that ordered the bail forfeited, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant" (*id.*, subd. (f)); and "where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant" (*id.*, subd. (g)).

■ The provisions of section 1305 "must be strictly followed or the court acts without or in excess of its jurisdiction. [Citation.]" (*People v. American Bankers Ins. Co., supra*, 4 Cal.App.4th at p. 354.) "The burden is upon the bonding company seeking to set aside the forfeiture to establish by competent evidence that its case falls within the four corners of these statutory requirements." (*Ibid.*; accord, *County of Los Angeles v. Fairmont Specialty Group* (2008) 164 Cal.App.4th 1018, 1027 [79 Cal.Rptr.3d 421].)

■ The specific provision at issue here is section 1305, subdivision (c)(2), which provides that the court shall direct the order of forfeiture to be vacated and the bond exonerated "[i]f, within the county where the case is located, the defendant is surrendered to custody by the bail or is arrested in the underlying case within the 180-day period, and is subsequently released from custody prior to an appearance in court . . . ." Subdivision (h) of section 1305 explains that the term " 'arrest' " must be interpreted to include "a hold placed on the defendant in the underlying case while he or she is in custody on other charges."

■ The key terms for interpretation are "arrested in the underlying case" in section 1305, subdivision (c)(2) and "hold placed on the defendant in the underlying case" in subdivision (h). In construing these terms, " 'we must . . .

consider " 'the object to be achieved and the evil to be prevented by the legislation.' " [Citation.]' " (*In re Marquez* (2003) 30 Cal.4th 14, 20 [131 Cal.Rptr.2d 911, 65 P.3d 403].) Words used will be given the meaning that " 'reason and justice require . . . , rather than a literal meaning which would lead to an unjust and absurd consequence.' " (*People v. American Bankers Ins. Co.* (1991) 227 Cal.App.3d 1289, 1295 [278 Cal.Rptr. 314], overruled on another ground in *People v. National Automobile & Casualty Ins. Co.* (2000) 82 Cal.App.4th 120 [97 Cal.Rptr.2d 858].) Courts do not " 'blindly follow the literal meaning of every word if to do so would frustrate the legislative purpose.' " (*People v. Ranger Ins. Co., supra*, at p. 1384, italics omitted.) The provisions of section 1305 in particular must be accorded "a reasonable, commonsense construction in line with [their] apparent purpose, in order to advance wise legislative policy and avoid absurdity." (*People v. Ranger Ins. Co.* (1992) 9 Cal.App.4th 1302, 1307 [12 Cal.Rptr.2d 343].)

Respondent County of Los Angeles maintains that the determination whether Davis was arrested or placed on hold in the underlying case should turn on what the booking officer subjectively believed. We believe a more commonsense interpretation is required. Officer Hattrup arrested and booked Davis for shoplifting on August 21, 2006. While Davis was in custody, the officer learned of the outstanding bench warrant and contacted the Inglewood Police Department. Although Davis was never formally arrested for the failure to appear, Officer Hattrup's actions leave no doubt that Davis would not have been released until the Culver City Police Department ascertained the status of the outstanding warrant. Thus, from the time Officer Hattrup learned of the warrant to the time she was notified to ignore it, Davis was subject to a "hold . . . in the underlying case" within the meaning of section 1305, subdivision (h), and thus "arrested in the underlying case" under subdivision (c)(2). (Cf. *In re Marquez, supra*, 30 Cal.4th at p. 20 [prisoner's custody may be attributed to two different charges pending in two different jurisdictions].)

Our construction does not render the phrase "in the underlying case" surplusage. Had Officer Hattrup remained ignorant of the outstanding warrant, Davis's detention could not be attributed to "the underlying case." However, she was aware of the warrant, and there is no suggestion she intended to do anything but honor it until advised otherwise by Sergeant Salcedo. In contrast, where an arresting agency remains ignorant of an outstanding warrant, it cannot be said that the defendant is subject to a hold "in the underlying case."

As both sides concede, there is no authority directly on point. We find support for our conclusion in *People v. Far West Ins. Co.* (2001) 93 Cal.App.4th 791 [113 Cal.Rptr.2d 448] (*Far West*). There, the defendant was

located by the surety's agent in Georgia and taken into custody by Georgia authorities, who contacted the police department in Oakland where he was wanted for failing to appear at a court hearing in connection with a pending armed robbery charge. The Oakland Police Department, without notifying the district attorney's office, instructed the Georgia sheriff to "release [the] hold" on the defendant. (*Id.* at p. 793.) The respondent county contended that under the facts presented, "the prosecuting agency" had made no election against extradition as required for exoneration of the bond under section 1305, subdivisions (f) and (g). The court, relying on the principle that the statutes governing bail " 'must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture' " and given a " 'reasonable, commonsense construction in line with [their] apparent purpose, in order to advance wise legislative policy and avoid absurdity,' " concluded that the failure to alert the district attorney's office was not fatal to the surety's motion for relief from forfeiture. (*Far West, supra,* 93 Cal.App.4th at p. 795.) The court did not attempt "to formulate a broad legal rule," but held that "under the circumstances [presented]—a California fugitive admitted to bail, apprehended and held in custody in another state, is released as a result of errors committed solely by officials of the demanding county government and the surety has done all that is required of it under the terms of the bond—bail is exonerated." (*Id.* at p. 798.) To hold otherwise, "would discourage sureties from undertaking to underwrite bail bonds, contrary to the evident policy of the Legislature as expressed in the statutory scheme." (*Ibid.*)

■ Similar principles guide us here. Bench warrants are orders from the court "command[ing]" law enforcement officials to "forthwith . . . arrest" the named defendant and "bring him or her before [the] Court." (§ 981.) Sureties who enter into bond agreements have a right to presume that the authorities will carry out their legal responsibilities and take custody of absconding defendants when they are located and arrested by fellow officers in other jurisdictions. In *Far West,* the defendant's arrest was the result of the efforts of the surety. Davis's arrest came about as the result of fortuitous circumstances. In both cases, however, the arresting officers learned of the outstanding warrants and law enforcement officials within the appropriate jurisdictions were immediately informed that the defendants were in custody and available for transfer. To accept that authorities may willfully ignore a lawful warrant and still collect from the sureties involved is at odds with section 1305, which in general requires exoneration when the defendant's absence from court is entirely the fault of the authorities in the jurisdiction where the case is located. The object of the bail and forfeiture provisions is to ensure the attendance in court of the defendant, not to bring " 'revenue to the state' " or " 'punish[] . . . the surety.' " (*Far West, supra,* 93 Cal.App.4th at pp. 794–795, quoting *People v. Wilcox, supra,* 53 Cal.2d at pp. 656–657.) An interpretation of section 1305, subdivisions (c)(2) and (h) permitting a bail

forfeiture to stand under the circumstances presented here would create a financial disincentive to enforcing warrants and bringing criminal defendants to justice, and would undermine the Legislature's carefully constructed statutory scheme.

## DISPOSITION

The judgment and order denying Fairmont's motion to set aside summary judgment, discharge the forfeiture and exonerate the bail are reversed. The forfeiture is vacated and the bail exonerated. Fairmont shall recover its costs on appeal.

Epstein, P. J., and Suzukawa, J., concurred.