[No. B221639. Second Dist., Div. Five. Nov. 8, 2010.]

THE PEOPLE, Plaintiff and Appellant, v.
LEXINGTON NATIONAL INSURANCE COMPANY, Defendant and
Respondent.

[redacted]

## Counsel

Steve Cooley, District Attorney, Patrick D. Moran and Shirley S. N. Sun, Deputy District Attorneys, for Plaintiff and Appellant.

Shahbaz Law Group and Jacob A. Shahbaz for Defendant and Respondent.

## Opinion

**KRIEGLER, J.**—A defendant convicted by jury of two felonies failed to appear for sentencing, resulting in the forfeiture of bail. The surety moved to exonerate the bail under Penal Code section 1305, subdivision (f),[1] on the basis defendant was in custody in Chechnya and the district attorney had

---

[1] All statutory references are to the Penal Code, unless otherwise indicated.

refused to extradite. The district attorney opposed exoneration, arguing there had been no such election because the United States and Chechnya had no extradition treaty.

Relying on the reasoning of *People v. Far West Ins. Co.* (2001) 93 Cal.App.4th 791 [113 Cal.Rptr.2d 448] (*Far West*), the trial court ruled the surety had done all that it could by finding defendant in Chechnya and, weighing the equities, determined bail should be exonerated. On the district attorney's timely appeal, we reverse, holding the absence of an extradition treaty with Chechnya precludes relief from forfeiture under section 1305, subdivision (f), and the trial court abused its discretion in granting relief based on consideration of the equities present in this case.

## BACKGROUND

Soslan Savlokhov was charged by the District Attorney of Los Angeles County with battery with serious bodily injury (§ 243, subd. (d)) and assault with a deadly weapon or by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)). Lexington National Insurance Company (Lexington), the surety, posted bond in the amount of $50,000 to secure Savlokhov's release on May 19, 2008. On February 4, 2009, a jury convicted Savlokhov of both counts and further found that he had personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). Savlokhov, who remained released on bail after conviction, was ordered to return for sentencing on February 26, 2009.

Savlokhov failed to appear for sentencing and bail was forfeited. A bench warrant was issued in the amount of $300,000. After the clerk's notice of the forfeiture was duly mailed, a motion by Lexington to vacate the forfeiture and exonerate bail was denied, but a later motion pursuant to section 1305.4 to extend time to surrender a fugitive for 180 days was granted.

*Lexington's Second Motion to Exonerate and the Trial Court's Ruling*

Lexington filed a second motion to vacate the forfeiture and exonerate bail on October 9, 2009. The motion argued Savlokhov was arrested on August 5, 2009, in Argun, Grozny District, Republic of Chechnya. Relying on section 1305, subdivision (f), Lexington contended it was entitled to exoneration of the bond because Savlokhov was in custody and the district attorney had refused to extradite.

The motion was supported by the declaration of Julie Martin, a paralegal in the office of counsel for Lexington. Martin had sent a letter to the district

attorney, indicating Savlokhov was "located and arrested" in Chechnya. She requested that the district attorney indicate whether there would be an election to extradite.

Attached to Martin's letter was a translation of a "Suspect Detainment Report" from the Republic of Chechnya, Office of Investigations. According to the report, a Russian citizen named "Soslan Savlokov," with a date of birth of July 29, 1981,[2] was arrested in Chechnya on August 5, 2009, after driving an automobile under the influence of narcotics and causing an accident resulting in injury to others. The report indicated "Savlokov" was "placed in police custody/Preliminary Incarceration Unit" in the City of Argun. The original report, written in what both parties describe as the Cyrillic alphabet, was also attached to the letter.[3]

The district attorney opposed the motion in writing, noting that the only basis for relief in Lexington's motion was the refusal of the prosecutor to extradite a fugitive in custody under section 1305, subdivision (f). Lexington was not entitled to relief, according to the opposition, because the district attorney had not made an election against extradition under section 1305, subdivision (f), as there is no extradition treaty between the United States and Chechnya. The prosecutor's affidavit and supporting documents established the absence of an extradition treaty with Chechnya under title 18 United States Code section 3181.

At a hearing on October 27, 2009, the trial court confirmed the district attorney's position that an election to extradite could not be made because there is no extradition treaty with Chechnya. The court expressed the opinion that under the reasoning in *Far West, supra,* 93 Cal.App.4th 791, the surety did all that it could and it was impossible to obtain the fugitive. The prosecutor responded that *Far West* was distinguishable because the sheriff in that case had released a hold; in this case, the warrant for Savlokhov remained extant.

The trial court reiterated its belief the surety had done "everything" it could do, including identifying where Savlokhov is located. The court accepted responsibility for not remanding Savlokhov after the verdict and weighing the equities, ruled that Lexington was entitled to relief. The prosecutor responded that equitable considerations are not part of section 1305, subdivision (f), and that Lexington failed to meet all the statutory requirements for relief under that statute.

---

[2] This date is apparently consistent with Savlokhov's date of birth.

[3] The district attorney did not challenge the accuracy of the translation or the contents of the original report in the trial court.

The trial court granted the motion to exonerate the bond, but "invite[d] the People to appeal and perhaps the appellate court will see it your way."[4]

## DISCUSSION

The district attorney seeks to overturn the order exonerating the bond on three grounds. First, Lexington has not established entitlement to relief under section 1305, subdivision (f), because it is undisputed that there is no extradition treaty between the United States and Chechnya, and accordingly, the district attorney had no option to extradite. Second, the prosecutor argues the information in the "Suspect Detainment Report" was two months old at the time it was offered to the district attorney by paralegal Martin, and the document did not establish that Savlokhov was currently in custody in Chechnya. Third, Lexington was not entitled to relief under equitable principles, as the surety assumed the risk of his flight to Chechnya when it posted bond. We agree with the first and third contentions and need not discuss the second.

*Standard of Review*

The trial court's order exonerating the bond is appealable. *(People v. Wilcox* (1960) 53 Cal.2d 651, 654 [2 Cal.Rptr. 754, 349 P.2d 522].) We review the order under the deferential abuse of discretion standard, subject to the dictates of the statutory bail scheme. The law disfavors forfeitures, and we must construe the relief statutes in favor of the surety. (*County of Los Angeles v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 538, 542–543 [92 Cal.Rptr.3d 767] (*Fairmont Specialty Group*); *County of Orange v. Lexington Nat. Ins. Corp.* (2006) 140 Cal.App.4th 1488, 1491–1492 [45 Cal.Rptr.3d 543].) In those instances in which the statute requires the court to act in a particular way, an act inconsistent with the statute is an abuse of discretion. (See *Fairmont Specialty Group, supra,* at pp. 543–544; *People v. Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379, 1383, 1387 [59 Cal.Rptr.2d 777].)

*Relief Under Section 1305, Subdivision (f)*

Section 1305, subdivision (f), provides as follows: "In all cases where a defendant is in custody beyond the jurisdiction of the court that ordered the bail forfeited, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release."

---

[4] After the trial court indicated its intent to grant the surety's motion, the prosecutor argued that loss on a bond when the accused flees to a place beyond the reach of the state is the type of risk inherent in the surety's business.

█ A body of decisional law has defined the significance of the prosecuting agency's inability to extradite from a foreign country under both subdivisions (g)[5] (applying to situations in which the fugitive is not in custody but is detained by the bail agent beyond the jurisdiction of the state, including in a foreign country) and (f) of section 1305. In *County of Orange v. Ranger Ins. Co.* (1998) 61 Cal.App.4th 795 [71 Cal.Rptr.2d 811], the court held subdivision (g) does not provide a basis for relief to a surety when extradition is not feasible. "The term elect implies a choice of options. (See Am. Heritage Dict. (2d college ed. 1982) p. 442 [Elect means, 'To make a choice or selection.'].) And under section 1305, subdivision (g), the implication is that the prosecutor will have the option whether or not to seek extradition. When extradition is not feasible, there can be no meaningful election whether to seek extradition, and the conditions for forfeiture relief have not been satisfied." (*County of Orange v. Ranger Ins. Co., supra*, at p. 802.) "Extradition will be deemed infeasible when the host country, as a matter of policy and practice, refuses to grant extradition requests in the category of cases involved in the controversy at hand." (*Id.* at p. 803.) Because the record established that Mexico would not extradite for a nonheinous crime, despite the existence of an extradition treaty, the surety was not entitled to relief. (*Id.* at pp. 803–805.)

This court held in *Fairmont Specialty Group, supra*, 173 Cal.App.4th at pages 544–545, that a surety was not entitled to relief from forfeiture under section 1305, subdivision (g), when a fugitive defendant was located in Honduras, which had a policy of not extraditing to the United States. We held that because extradition from Honduras was not feasible, the prosecutor had not made an election against extradition, and the surety was not entitled to be freed of its obligation on the bond. (173 Cal.App.4th at pp. 544–545.)

█ In this case, we state the obvious: the prosecutor has not made the election against extradition of Savlokhov from Chechnya, because there is no extradition treaty between Chechnya and the United States. Extradition is not feasible in the absence of an extradition treaty. Lexington failed to satisfy the requirements of section 1305, subdivision (f), and is not entitled to relief on the ground stated in its motion. We turn to the trial court's ruling that the equities compel relief to the surety under the reasoning in *Far West, supra*, 93 Cal.App.4th 791.

---

[5] Section 1305, subdivision (g), provides: "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release."

*The Decision in* Far West

The defendant in *Far West* fled while on bail and was located by an agent of the surety within the United States, in Georgia. The surety's agent confirmed with the Oakland Police Department that the warrant for the defendant remained outstanding and that the state would extradite. The District Attorney of Alameda County was not consulted regarding extradition. Based on the police department's assurance, the defendant was taken into custody on the warrant in Georgia. Shortly thereafter, the Oakland Police Department advised the Georgia authorities to release the defendant. The trial court denied the surety's motion to vacate the forfeiture and exonerate bail because section 1305, subdivision (g), gives the prosecuting agency, in this instance the Alameda County District Attorney, not a local police department, the power to elect to extradite. (*Far West, supra,* 93 Cal.App.4th at pp. 792–793.)

The Court of Appeal reversed, framing the issue as follows: "Thus, to decide whether the trial court was correct in denying the motion to vacate forfeiture and exonerate the bond, the only question we must resolve is the one on which the trial court rested its ruling—whether the fact that the 'prosecuting authority,' the Office of the Alameda County District Attorney, was never advised by the surety, Georgia officers, or the warrants section of the Oakland Police Department, that [the fugitive defendant] was in custody and subject to extradition on the California warrant, is fatal to the surety's motion for relief from the order of forfeiture." (*Far West, supra,* 93 Cal.App.4th at p. 796.)

Finding "the result reached by the trial court on these facts is at odds with the purposes underlying the statutory bail scheme and contrary to the ancient equitable principle that forfeitures are abhorrent," the court reasoned that "it is preferable to rest the outcome on principles of equity rather than to embrace a result that can fairly be termed 'absurd.' [Citation.]" (*Far West, supra,* 93 Cal.App.4th at p. 796.) The equities favored the surety, as it was an error "that led to the release of a dangerous felon wanted by Alameda County authorities on armed robbery charges and the surety having done everything required of it under the statute and bond . . . ." (*Id.* at p. 797.) "We need not attempt to formulate a broad legal rule illustrated by the facts of this case. It is enough to conclude that under the circumstances shown here—a California fugitive admitted to bail, apprehended and held in custody in another state, is released as a result of errors committed solely by officials of the demanding county government and the surety has done all that is required of it under the terms of the bond—bail is exonerated. [Citations.]" (*Id.* at p. 798.)

We fail to see any material similarity between what happened in *Far West* and the instant case. First, Savlokhov's incarceration in Chechnya was not the

result of any action taken by the District Attorney of Los Angeles County, any other California authority, or the surety. In contrast, the fugitive defendant in *Far West* was located by the surety and taken into custody on a California warrant in the State of Georgia, based on representations by the Oakland Police Department. Second, extradition from Chechnya was not feasible in the absence of a treaty, while extradition of the defendant in *Far West* from Georgia presented no similar obstacle. Third, there is no evidence Savlokhov has been released from custody in Chechnya, based on a representation by a California law enforcement official. The court in *Far West* properly focused on the involvement of California law enforcement officials in the detention and erroneous release of the fugitive as a basis for applying equitable principles in concluding that it should not be the surety who bears the consequences of the error. (*Far West, supra,* 93 Cal.App.4th at pp. 797–798.) We agree with those considerations, but they simply have no application in this case.

The rule announced by the trial court in this case would rewrite the bail statutes to provide a surety with relief from forfeiture whenever a defendant is located in or out of custody in a country that does not have an extradition treaty with the United States, without regard to governmental fault. This interpretation constitutes an abuse of discretion as it is inconsistent with the explicit dictates of section 1305, subdivisions (f) and (g), which allow for exoneration of the bond when the prosecuting agency elects not to extradite.

The equities in this case, as a matter of law, do not favor the surety. The surety made the business decision to provide bond for a defendant who apparently was a Russian citizen. The district attorney played no role in Savlokhov's flight to Chechnya or his incarceration there. We decline to extend the reasoning of *Far West* to a case in which there was no governmental role or fault. The risk for Savlokhov's failure to appear, both by statute and in equity under the facts in this case, belongs only to the surety.

*Mootness*

Counsel for the surety sent a facsimile letter to this court three days before the calendar date for oral argument, purporting to notify the court that Savlokhov was now in the custody of the Los Angeles County Sheriff and asserting the appeal is now moot. We summarily reject the mootness argument for two reasons. First, the surety has not made a competent showing that Savlokhov is in custody, as an unsworn, two-sentence letter from counsel unsupported by any official documentation does not constitute competent evidence. Second, the suggestion that Savlokhov's purported custody at this late stage renders the appeal moot is without merit. The county was entitled to final judgment more than one year ago, and the county's right to judgment is not moot even if Savlokhov has belatedly been returned to local custody.

## DISPOSITION

The judgment is reversed. Costs on appeal are awarded to the District Attorney of Los Angeles County.

Turner, P. J., and Armstrong, J., concurred.